UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANDREA GANSKY,

                Plaintiff,

     v.

VJJ HOLDING COMPANY LLC d/b/a
WOODHAVEN CENTER OF CARE,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

No.: _____

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Andrea Gansky hereby alleges through her attorneys, Lipsky Lowe LLP, as against Defendant VJJ Holding Company LLC d/b/a Woodhaven Center of Care ("Defendant") as follows:

## NATURE OF THE ACTION

1.    Plaintiff alleges that Defendant willfully violated the New York Labor Law ("Labor Law") by retaliating against her for reporting safety concerns.

2.    Plaintiff further alleges that Defendant willfully violated the Labor Law and the Fair Labor Standards Act by failing to pay her (1) for all hours worked, and (2) overtime.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b).

4.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2).

5.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

THE PARTIES

6.     Plaintiff was, at all relevant times, an adult individual, residing in Farmingville, New York.

7.     Upon information and belief, Defendant is a domestic limited liability company organized and existing under the laws of the State of New York.

8.     Defendant is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and materials have been produced for an moved in commerce, which its employees have handled, include, but are not limited to, pens, paper and gloves.

9.     Defendant, either directly or indirectly, hired and fired Plaintiff, controlled Plaintiff's work schedule and employment conditions, determined her payment rate and method, and kept at least some records regarding her employment.

STATEMENT OF FACTS

10.     Defendant owns and operates a nursing home and rehabilitation center in Port Jefferson Station, New York.

11.     Plaintiff commenced her employment with Defendant in 2015 as a Nursing Supervisor.

12.     As a Nursing Supervisor, Plaintiff's duties included, *inter alia*, doing admissions and watching the building. Defendant, in addition, regularly required her to

-2-

perform certain Registered Nurse ("RN") duties, including doing "med passes," or administering medication to patients because they did not have enough employees to perform these tasks.

Laws Governing Narcotics in Nursing Homes

13.   21 C.F.R. § 1301.76(b) provides that "[t]he registrant shall notify the Field Division Office of the [U.S. Drug Enforcement] Administration in his area, in writing, of the theft or significant loss of any controlled substances within one business day of discovery of such loss or theft."

14.   10 N.Y.C.R.R. § 80.110(a) provides that

> [p]ersons licensed or certified pursuant to article 33 of the Public Health law and persons authorized to possess controlled substances in connection with his authorized activities shall promptly notify the department of each incident or alleged incident of theft, loss or possible diversion of controlled substances manufactured, ordered, distributed or possessed by such person; a form of this purpose furnished by the department shall be filed with the Bureau of Narcotic Enforcement, New York State Department of Health.

Retaliation

15.   In January or February 2022, Defendant hired a new LPN named Katie Smith.[1]

16.   In March 2022, Plaintiff, while doing a med pass, noticed that a substantial number of Oxycontin pills – a narcotic used to treat pain – for one of Defendant's patients and the accompanying narcotics control sheet were missing – facts of which she was personally aware because she administered the pills to that patient the day prior. She,

---

[1] All dates and date ranges are based on Plaintiff's best estimates.

accordingly, submitted a written statement to Defendant stating that she believed Smith stole the pills and the control sheet.

17.     After Plaintiff submitted the written statement to Defendant concerning Smith, Nancy (last name unknown) (Director) and Julie Alleyne (Assistant Director) suggested to Plaintiff that she change her statement. They, for example, regularly asked her "are you sure there weren't only two or three pills missing?" – implying that they could ignore the incident with Smith and not take any corrective action if Plaintiff stated that she only noticed two or three pills missing because they could then claim they were wasted or discarded instead of stolen. Plaintiff, however, refused to lie.

18.     Thereafter, in March 2022, Defendant terminated Smith and created a new control sheet to replace the one that had been stolen, which it backdated to give the appearance that the pills and sheet had not been stolen – demonstrating that it did not intend to take any further action in relation to this incident.

19.     Defendant, upon information and belief, did not notify the U.S. Drug Enforcement Administration ("DEA") nor the New York Department of Health that there were missing narcotics at its nursing home facility.

20.     Beginning one week after Smith's termination, Nancy and Alleyne regularly suggested to Plaintiff that she could get in trouble for the incident with Smith. This surprised Plaintiff because she was not involved in stealing the pills or the control sheet but, instead, reported her concerns to Defendant as soon as she observed what had happened.

21.     In March 2022, Plaintiff asked Nancy why Defendant had not reported the missing narcotic pills to the DEA, as required by law. Nancy responded by squinting her

eyes and informing Plaintiff that she would thereafter not be permitted to enter the Supervisor's office – demonstrating that she was retaliating against her for complaining about Defendant's failure to report the stolen pills to the DEA.

22.     Defendant, thereafter, continued to retaliate against Plaintiff for complaining about its failure to comply with the law by demoting her from an RN to an LPN position. It, in addition, required her to sign a form saying that she would do med passes on a 30-day probationary period and, after that period, it would decide whether she was capable of returning to her supervisory position. This surprised her because she had 20 years of experience doing med passes and worked in a supervisory position for 7 years.

23.     In April 2022—approximately one month after she complained about Defendant's failure to report the missing pills – Nancy called Plaintiff and told her that her services were no longer needed and that she was terminated effective immediately. She did not provide a reason for Plaintiff's termination– demonstrating that Defendant terminated her in retaliation for complaining about its failure to report the missing narcotics to the DEA.

24.     Throughout her employment with Defendant, Plaintiff never received any formal or informal complaints or reprimands about her performance. In fact, Defendant often told her that it was pleased with her performance and praised her hard work – further demonstrating the retaliatory animus underlying her termination.

25.     Defendant terminated Plaintiff for complaining about Defendant's failure to comply with the law.

26.     No legitimate, non-retaliatory reason exists for terminating Plaintiff's employment.

27.     When making her March 2022 complaint, Plaintiff reasonably believed that Defendant's failure to report the missing narcotics violated the law, including 21 C.F.R. § 1301.76(b).

28.     When making her March 2022 complaint, Plaintiff objected to Defendant's failure to failure to report the missing narcotics as she believed its actions were incompatible with a clear mandate of public policy on public health, safety and welfare.

29.     Defendant's retaliation of Plaintiff has caused her significant emotional distress. She, in fact, developed a nervous condition and has started seeing a therapist.

Wage and Hour Violations

30.     From 2015 to December 2021, Defendant did not pay Plaintiff a fixed weekly rate.

31.     From 2015 to December 2021, Defendant paid Plaintiff $36.00 per hour and classified her as a non-exempt employee, entitled to overtime.

32.     From 2015 to December 2021, Defendant paid her only for her hours worked up to 40.

33.     From January 2022 until she was unlawfully terminated in April 2022, Defendant paid Plaintiff $140,000.00 per year.

34.     Throughout her employment, Defendant scheduled Plaintiff to work from 3:00 p.m. to 11:00 p.m., 5 days per week, totaling 40 hours per week. From April 2020 until she was unlawfully terminated in April 2022, Defendant required her to work an additional shift, resulting in her working from 3:00 p.m. to 7:00 a.m., 5 days per week, totaling 80 hours per week (the "Additional Shifts").

35.     From April 2020 to December 2021, Defendant failed to pay Plaintiff for the Additional Shifts that she worked.

**FIRST CAUSE OF ACTION**
VIOLATION OF NEW YORK'S WHISTLEBLOWER LAW

36.     Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

37.     Defendant was an employer within the meaning of N.Y. Lab. Law §§ 190, 196-d, 615(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff.

38.     Plaintiff complained to Defendant about its failure to report the missing narcotics, which she reasonably believed violated a law, rule or regulation and created a danger to public health and safety.

39.     Defendant terminated Plaintiff for complaining about public safety concerns which she reasonably believed violated a rule or regulation, violating N.Y. Lab. § 740.

40.     No legitimate, non-retaliatory reasons exist for the adverse action Defendant took against Plaintiff.

41.     Defendant's actions against Plaintiff were willful, malicious and wanton.

42.     Defendant is liable to Plaintiff for her loss of wages, liquidated damages, punitive damages, and attorneys' fees and expenses.

<u>SECOND CAUSE OF ACTION</u>
FAILURE TO PAY OVERTIME UNDER THE FLSA

43.     Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

44.     Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce under the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

45.     Defendant was required to pay Plaintiff no less than 1.5 times the regular rate at which she was employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

46.     At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiff the proper overtime compensation for her hours worked in excess of 40 hours per workweek.

47.     Defendant was aware or should have been aware that the practices described in this Complaint were unlawful, making its violations willful or reckless.

48.     Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiff's compensation.

49.     Defendant has failed to make, keep and preserve records with respect to its employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

### THIRD CAUSE OF ACTION
### FAILURE TO PAY THE OVERTIME PREMIUM PAY
### UNDER THE NEW YORK LABOR LAW

50.     Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

51.     Defendant is an employer under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff.

52.     Under the Labor Law and supporting New York State Department of Labor Regulations, Defendant was required to pay Plaintiff 1.5 times her regular rate of pay for all hours she worked in excess of 40.

53.     Defendant failed to pay Plaintiff overtime premium pay for any hour she worked above 40 in a week, violating the Labor Law. 12 N.Y.C.R.R. § 142-2.2

54.     Defendant failed to compensate Plaintiff at her overtime premium rate for any hours worked in excess of 40 per week.

55.     Defendant has willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff the correct amount of overtime wages.

56.     Due to Defendant's Labor Law violations, Plaintiff is entitled to recover from Defendant her unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.  N.Y. Lab. Law § 663.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1.      Accepts jurisdiction over this matter.

2.      Impanels and charges a jury with respect to the causes of action.

3.      Awards Plaintiff the following damages against Defendant:

        a.      Back pay, front pay, and all benefits along with pre and post judgment interest;

        b.      An award of punitive damages;

        c.      An award for liquidated damages, prejudgment and post-judgment interest;

        d.      Attorneys' fees, costs and expenses to the fullest extent permitted by law; and

        e.      Any other relief that this Court deems just and equitable.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:  New York, New York
        October 26, 2022

LIPSKY LOWE LLP


By: <u>s/ Douglas B. Lipsky     </u>
    Douglas B. Lipsky
    Sara J. Isaacson
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
212.392.4772
doug@lipskylowe.com
sara@lipskylowe.com
*Attorneys for Plaintiff*